James E. Murphey v. State of Nebraska.

Filed December 5, 1894. No. 6738.

1. **Assault With Intent to Inflict Great Bodily Injury:**
INFORMATION. In a prosecution under the provisions of section. 17*b*, Criminal Code, for an assault with intent to inflict great bodily injury, it is sufficient to charge the offense in the language of the statute without stating the means with which the assault was committed.

2. ———: CHARACTER OF INJURY: QUESTION FOR JURY. The term "great bodily injury," as there employed, is not susceptible of a precise definition, but implies an injury of a graver and more serious character than an ordinary battery; and whether a. particular case is within the meaning of the statute is generally a question of fact for the jury.

3. ———: ———. A great bodily injury, within the meaning of the statute, does not necessarily mean a permanent injury.

4. **Criminal Law:** TRIAL: EXCLUDING STATE'S WITNESSES FROM COURT ROOM. The trial court may, in its discretion, refuse to exclude the witnesses for the state from the court room during the trial, and such an order, in the absence of an evident abuse of discretion, is not the subject of review on appeal.

5. ———: REBUTTING EVIDENCE. As a rule, the party holding the affirmative will not be permitted to prove again in rebuttal facts shown in making out his case in chief; but it is within the discretion of the court to permit the introduction, in closing, of evidence not strictly rebutting.

6. ———: ASSAULT: PRESUMPTION OF AN INTENTION TO INJURE: PROOF. No wrong, however serious to the person of another, will alone warrant a conviction for an assault with intent to inflict great bodily injury; but when the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the accused, the presumption is that it was the result contemplated by him in the commission of the assault. Such presumption is, however, one of fact merely; and while the jury may infer the intention alleged without other proof, there is no obligation resting upon them to do so.

7. ———: ———: ———: ———. Nor is it essential to a conviction for such offense that the accused should have intended the

precise injury which followed. It is sufficient if serious bodily harm of any kind was contemplated by him at the time of the assault.

8. **Assault with Intent to Inflict Great Bodily Injury:** SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION. The prisoner, without provocation, struck the prosecutor, an elderly man, a blow with his fist, instantly knocking him down, and kicked him twice or more. The latter, on attempting to arise, discovered that his right leg was broken. With the assistance of friends he retreated across the street, where, a few minutes later, he was followed by the prisoner, who again struck him, saying, "D—n your old soul, I will teach you to keep your nose out of my business." The prosecutor, who was suffering and helpless from the effect of his broken limb, was thrown or pushed by the prisoner from the sidewalk into the gutter, where the latter kicked at him several times, but the interference of by-standers prevented the infliction of further injury. *Held,* To sustain the conviction for assault with intent to inflict great bodily injury.

9. **New Trial:** CONFLICTING EVIDENCE: IMPEACHING VERDICT: REVIEW. Where the evidence by which it is sought to impeach a verdict on account of the prejudice of a single juror, subsequently discovered, is conflicting, an order denying a new trial will not as a rule be disturbed on appeal. (*Hill v. State,* 42 Neb., 503.)

10. **Juror:** ACCEPTANCE: PREJUDICE AS GROUND FOR NEW TRIAL. A party who chooses to accept a juror shown by his examination to be disqualified on account of an opinion formed from a knowledge of the facts involved cannot afterward allege the prejudice of such juror as ground for a new trial.

ERROR to the district court for Seward county. Tried below before BATES, J.

The facts are stated in the opinion.

*George B. France* and *D. C. McKillip,* for plaintiff in error:

The information fails to charge the accused with any crime other than assault and battery. (Consolidated Statutes, sec. 5595; *Buchanan v. State,* 13 S. W. Rep. [Tex.], 1000.)

The court should have separated the state's witnesses during the trial. (1 Greenleaf, Evidence, 432.)

Proof of the physical condition of the prosecutor at the time of the trial was erroneously admitted in evidence. (*State v. Redfield,* 35 N. W. Rep. [Ia.], 673; *People v. Miller,* 52 N. W. Rep. [Mich.], 65; *Carr v. State,* 23 Neb., 759.)

The facts and circumstances do not show an attempt to inflict serious or dangerous injury, and therefore they are not sufficient to justify the jury in forming an inference of felonious intent to inflict the injury charged. (*Johnson v. State,* 14 Ga., 55; *Kunkle v. State,* 32 Ind., 220; *Mullen v. State,* 45 Ala., 45; *Allen v. State,* 52 Ala., 391; *State v. Clark,* 45 N. W. Rep. [Ia.], 910; *Krum v. State,* 19 Neb., 728.)

The accused had no thought or intention of breaking the prosecutor's leg, and cannot be found guilty, under the charge, for any injury not intended, even though it was the direct result of the assault. (*State v. Vosburgh,* 51 N. W. Rep. [Wis.], 1093; *State v. Clark,* 45 N. W. Rep. [Ia.], 910; *People v. Miller,* 52 N. W. Rep. [Mich.], 65; *Mullins v. State,* 37 Tex., 339; *Simpson v. State,* 59 Ala., 10; *Krum v. State,* 19 Neb., 728.)

No injury, however great, without the intent, will be sufficient, and no degree of assault and battery of a less dangerous or permanent injury will constitute the "great bodily injury" contemplated by the statute. (*Halsell v. State,* 29 Tex. App., 22; *George v. State,* 21 Tex. App., 315; *Buchanan v. State,* 13 S. W. Rep. [Tex.], 1000; *Godfrey v. People,* 63 N. Y., 207; *Keley v. State,* 12 Tex. App., 245; *People v. Miller,* 52 N. W. Rep. [Mich.], 65; *State v. Vosburgh,* 51 N. W. Rep. [Wis.], 1093.)

Accused was prevented from having a fair and impartial trial because two of the jurors had previously formed opinions as to his guilt. (*Miller v. State,* 29 Neb., 437; *Thurman v. State,* 27 Neb., 628; *Owens v. State,* 32 Neb.,

167; *Cowan v. State*, 22 Neb., 523 ; *Graham v. State*, 13 S. W. Rep. [Tex.], 1013.)

Counsel for plaintiff in error cited the following authorities in their criticism upon the instructions of the court : *Milton v. State*, 6 Neb., 137; *Ballard v. State*, 19 Neb., 609 ; *Long v. State*, 23 Neb., 33; *Clark v. State*, 32 Neb., 246 ; *Olive v. State*, 11 Neb., 1 ; *Krum v. State*, 19 Neb., 728.

*George H. Hastings, Attorney General*, for the state:

Assault with intent to inflict great bodily injury is a new offense. (Criminal Code, sec. 17*b* ; *Stricklett v. State*, 31 Neb., 674 ; *Smith v. State*, 34 Neb., 689.)

Where an offense is charged in the language of the statute it is sufficient. (1 Bishop, Criminal Procedure, secs. 611, 612, and cases cited ; *State v. Lauver*, 26 Neb., 757.)

The crime is sufficiently charged in an information which accuses the defendant of an assault and battery, alleging that defendant willfully and maliciously struck and beat the person injured with intent of doing him great bodily injury. (*State v. Carpenter*, 23 Ia., 506; *State v. Clark*, 80 Ia., 517.)

Evidence to prove the extent of the injury resulting from the assault was properly admitted. (1 Phillipps, Evidence, 378; *Curry v. State*, 5 Neb., 412.)

The evidence is sufficient if it shows that defendant unlawfully and purposely made a violent assault upon the complaining witness and inflicted great bodily injury. (*Denman v. State*, 15 Neb., 138; 2 Wharton, Criminal Law, sec. 941.)

As to the claim of accused that he is entitled to reversal on account of the prejudice of certain jurors, see *Hill v. State*, 42 Neb., 503; Thompson & Merriam, Juries, sec. 275; *Palmer v. State*, 4 Neb., 68.

POST, J.

This is a petition in error and presents for review the judgment of the district court for Seward county, whereby the plaintiff in error was convicted of an assault upon one Oliver with intent to inflict great bodily injury.

1. It is argued, first, that the information charges an assault and battery only and will not sustain a conviction for an aggravated assault. That contention is based upon the proposition that section 17b of the Criminal Code contemplates an assault with a weapon other than the members of the body. The effect of that section, as held in *Smith v. State*, 34 Neb., 689, was to create a new and substantive offense, and being a purely statutory one, it may be charged in the language of the act. (1 Bishop, Criminal Procedure, 611, 612.) The cases which appear to sustain a different view arose, it is believed, without exception, under statutes in which manner of the assault or the instrument used is included within the definition of the offense. The term "great bodily injury," as employed in the statute, is perhaps not susceptible of a precise legal definition. It is, however, as injury of a graver and more serious character than an ordinary battery; and whether a particular injury is within the meaning of the statute, is generally a question of fact for the jury and not of law. (See *State v. Gillett*, 56 Ia., 459.) That a great bodily injury, within the meaning of the statute, may be inflicted without the use of a "dangerous" or even "offensive" weapon is quite apparent from the facts of this case, to which reference will hereafter be made. The objection to the information is therefore without merit.

2. It is next contended that the trial court erred in refusing to exclude the witnesses of the state from the court room during the trial. But while the request is one rarely denied, especially when made by the defendant in a criminal prosecution, it is a subject within the discretion of the trial

court, and the refusal in this instance does not appear to have been an unreasonable exercise of that discretion. (1 Greenleaf, Evidence, 432.)

3. The state was permitted over the objection of the accused to prove by the prosecutor Oliver that in consequence of the injury received on the occasion of the assault charged his general health was seriously impaired and that he was still unable to perform manual labor. The evidence was rightly admitted. The extent of the injury inflicted by the accused was a proper subject of inquiry as bearing upon the question of the intent, and although the state might perhaps have rested upon proving that the leg of the prosecutor was broken during the assault, there was no error in permitting it to pursue the subject to the extent of showing the permanent effect of the injury. It was at most cumulative evidence and within the discretion of the court.

4. The prosecutor was recalled by the state in rebuttal for the purpose of contradicting certain statements of the accused, and over the objection of the latter gave evidence which was a substantial repetition of portions of his testimony given for the state in its case in chief. According to the prevailing rule, the plaintiff should be required to try his case out where he has once begun, and will not be allowed to prove again in rebuttal facts shown in presenting his *prima facie* case. The court may, however, in its discretion, receive evidence not strictly rebutting and such an exercise of discretion will not be made the subject of review except in case of evident abuse. (1 Thompson, Trials, 346.) These observations apply as well to the testimony of Joseph Oliver, son of the prosecutor, given in rebuttal.

5. The next assignment relied on is that the verdict is not sustained by the evidence. We learn from the bill of exceptions that on the day in question Mr. Oliver, the prosecutor, drove from his home to the village of Utica accompanied by his son and his niece, and that after hitch-

ing his team at a convenient place he visited the stable
kept by the accused, the purpose of his visit being a
friendly one and in no way tending to provoke the assault
which followed.  He was at once accosted by the accused
and charged with having spoken disparagingly of a horse
owned by the latter.  Oliver, who appears to have been
anxious to avoid an altercation, denied the above charge,
when the accused, almost without warning, struck him a
blow with his fist, instantly knocking him down.  He was
apparently unconscious from the effect of the blow and has
no recollection of what immediately followed, but Mr.
Hibbard, who witnessed the assault from the opposite side
of the street, saw the accused kick him twice at that time.
Friends soon afterward came to his relief, when it was dis-
covered that both bones of his right leg were broken near
the ankle.  He was assisted to a chair on the opposite side-
walk, where he was, a few minutes later, again assaulted
by the accused, who had in the meantime followed him
from the stable.  Several witnesses to the second assault
testify to facts which prove it to have been as brutal as it
was unprovoked.  For instance, Mr. Leggitt, a disinter-
ested and apparently truthful witness, described it in the
following language: "Just about that time Mr. Murphey
was leaving his barn door and came across in a hurried
like way and was talking pretty loud and swearing some.
I would not attempt to repeat what he said, but when he
came up to where Mr. Oliver sat in the chair, he said,
'D——n your old soul, I will learn you to keep your nose
out of my business,' or something to that effect, and Mr.
Oliver put out his foot and it came against Murphey, and
he said, 'Jim, you go away.  I have not said anything
about you, and I don't want anything to do with you.'
Just about that time Murphey grabbed Mr. Oliver by his
clothes and Oliver fell over on the sidewalk, and they
rolled out into the ditch.  Then Jim struck him again.  I
took hold of him and said, 'Jim, Jake [meaning the prose-

cutor] is an old man; let up,' and he did let up. When I took hold of him he tried to kick Mr. Oliver. I don't think he struck him, but did kick at him. Of course, being in my arms, he could not strike him very hard." The prosecutor, referring to the same transaction, testified as follows:

Q. What did he do then?

A. He struck me and kicked me.

Q. What effect did the kick have on you when he struck you first?

A. Knocked me off the chair, and I went on the sidewalk and he kicked me off into the street.

Q. Do you know how many times he kicked you?

A. I cannot tell how many times.

Q. Whereabouts on your person did he kick you?

A. He kicked me on my right side about here (indicating).

Q. State what effect it has had on you, if any.

A. It has had this effect, that I cannot sleep at nights nor can I eat my regular meals. When I lay down at nights there is a pressure right there all the time, and I cannot lay on that side.

He is corroborated by other witnesses with respect to the kicking at that time. It is not essential to a conviction for the offense charged that the accused should have intended the precise injury which followed as the result of the assault. It is sufficient if serious bodily harm of any kind was contemplated. (*People v. Miller*, 52 N. W. Rep. [Mich.], 65.) True, the injury, however serious, would not of itself authorize a conviction under the statute, and may for the purpose of this prosecution be regarded as immaterial, except so far as it tends to explain the motive of the accused. But where the injury proved is the natural and necessary consequence of the deliberate and inexcusable act of the accused, the inference is that it was the result contemplated by him when the assault was committed, and

may be sufficient evidence of the specific intent which is essential to a conviction. Such inference or presumption is, however, one of fact merely; and while the jury may convict without other proof of the intention alleged there is no obligation resting upon them to do so unless satisfied thereof beyond a reasonable doubt. That the accused intended to inflict a great bodily injury upon the prosecutor, is certainly a reasonable inference from the facts of this case. The knocking down and kicking, without provocation, of a man much his elder, his pursuit and second assault upon his crippled and helpless adversary, coupled with the attempt to again kick the latter while prostrate before him, not to mention the injuries actually inflicted, convinces us, and evidently satisfied the jury, that the wrongs intended were more serious than an ordinary assault and battery; and the fact that the broken leg may not have been the precise injury intended is, as we have seen, entirely immaterial. Nor have we overlooked the fact that in some jurisdictions the offense here involved is construed to mean both a serious and permanent injury to the person of the party assaulted. (See *Buchanan v. State*, 13 S. W. Rep. [Tex.], 1000; *Halsell v. State*, 29 Tex. App., 22.) We are, however, unable, to adopt that conclusion. The seriousness of the injury cannot, we think, in law or fact be said to depend upon its permanence. It is a fact abundantly attested by the observation and experience of ordinary men, that the most serious and dangerous of personal injuries are frequently attended by no lasting effect upon the health, strength, or comfort of the injured person. To adopt the view suggested by counsel in this case would not, it seems to us, be a construction of the statute, but rather an amendment thereof.

6. Another ground alleged is that two of the jurors had previous to the trial expressed opinions which show them to have been prejudiced against the accused. One of the jurors, Lortz, testified on his examination that he had

known both the accused and the prosecutor for nine or ten years, when his examination was concluded as follows:

Q. Have you ever talked with any of these parties?

A. Not with either one of the parties.

Q. Have you talked with any one?

A. Everybody in Utica, almost.

Q. I will ask you if, from what you seen and heard in regard to this case, you have formed or expressed any opinion as to the guilt or innocence of the defendant?

A. Yes, sir.

Q. Have you that opinion yet?

A. Yes, sir.

Q. I will ask you if such opinion as you have would interfere with your rendering a fair and impartial verdict on the testimony here?

A. No, sir.

State passes for cause.

Defendant passes for cause.

The juror named, in an affidavit filed by the state, admitted that he had formed an opinion with respect to the guilt of the accused from talking with the witnesses, and refers to his examination at the time he was passed for cause, but expressly denies the statement imputed to him in the affidavits submitted by the accused. It was said in *Hill v. State*, 42 Neb., 503, decided at the present term, that where the evidence by which it is sought to impeach a verdict on account of the prejudice of a single juror is conflicting, the order overruling a motion for a new trial on that ground will not, as a rule, be disturbed on appeal. In addition to what is there said it should be noted that there was in this instance sufficient ground for challenge, since the juror had at the time of his examination an opinion from talking with the witnesses. The inference is, therefore, that the accused believed the mind of the juror to be prejudiced in his own favor. Having knowingly taken the risk of an adverse verdict he will not now be heard to

complain. The other juror, Welty, also in explicit terms denies the alleged statements. The case is therefore clearly within the rule above stated.

7. Exception was taken to each paragraph of the charge of the court and the refusal of numerous requests to instruct. The charge is, in the main, an accurate statement of the law applicable to the case and certainly affords no just ground of criticism by the accused. The only proposition which it is deemed necessary to notice in this connection is that the court, after charging that an assault with intent to inflict great bodily injury means "an injury of a graver and more serious character than an ordinary assault and battery," should have technically defined the latter offense. Our statute does not follow the common law definition of an assault and battery. It is by section 17 of the Criminal Code provided that "If any person shall unlawfully assault or threaten another in a menacing manner, or shall unlawfully strike or wound another, the person so offending shall, upon conviction thereof, be fined," etc. That provision was, in substance, repeated in more than one paragraph of the instructions given by the court on its own motion. The charge, so far as it relates to that branch of the case, was even more favorable to the accused than he was entitled to, since the jury were told in express language that in order to convict they must be satisfied beyond a reasonable doubt that he intended by the assault to feloniously and maliciously inflict the injury alleged. That the offense charged is a felony is true, as we have seen, but that malice is not an element thereof seems clear from the language of the statute. A careful inspection of the record has disclosed no error prejudicial to the accused. It follows that the judgment should be and is

AFFIRMED.

NORVAL, C. J., absent and not sitting.