EGBERT GEMBLER V. CITY OF SEWARD.*
285 N. W. 542

FILED APRIL 28, 1939.   No. 30471.

---

*Modified on rehearing.   See p. 916, *post.*

*McKillip & Barth* and *Ivan A. Blevens,* for plaintiff in error.

*Paul H. Bek, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

The defendant prosecutes error to this court from a conviction for violating an ordinance of the city of Seward, Nebraska. In the complaint it is charged that defendant, within the city of Seward on May 2, 1937, did "wilfully and unlawfully operate a motor vehicle on the streets of the city of Seward," while he was intoxicated. This complaint was filed on May 3, 1937, before the police magistrate of the city of Seward, and from an adverse judgment the defendant sought a review in the district court for Seward county, where, after a trial, on March 11, 1938, he was adjudged guilty as charged in the complaint. Thereupon the defendant was fined in the sum of $50 and costs of suit, and it was further adjudged that the said defendant do not drive a motor vehicle within the state of Nebraska for a period of one year from date of conviction. From the order of the trial court overruling his motion for a new trial, and also denying defendant's application for a parole and a suspended sentence, the defendant prosecutes error to this court, as above stated.

Defendant's first contention is, that the title of Ordinance

No. 503 of the city of Seward, enacted and approved November 6, 1936, under which this prosecution was had, is defective, in that the scope of the same is not broad enough to include the provision of section 12 of the ordinance, providing that "It shall be unlawful for any person to drive any motor vehicle on the streets of such city while in a state of intoxication," and providing a penalty and relief therefor. The title is, in part, "An ordinance relating to alcoholic liquors; * * * making drunkenness a misdemeanor." The words of the controlling statutory provision are: "Ordinances shall contain no subject which shall not be clearly expressed in its (their) titles." Comp. St. 1929, sec. 17-520.

The provisions of section 14, article III of the state Constitution, have no application to city ordinances, nor the adoption thereof, and decisions thereunder are valuable only as analogies. The statutory provision above quoted being a restriction, it should be liberally construed. 25 R. C. L. 850, sec. 96; 856, sec. 101; 858, sec. 104.

In the construction of similar language it has been said: "It is intended to prevent the practice of joining in the same ordinance incongruous subjects, having no relation or connection with each other, and foreign to the subject embraced in the title. Matters germane to the general subject expressed in its title may be united. * * * The title need not be an index to the act; nor need it state a catalogue of all the powers intended to be bestowed. 'An abstract of the law is not required in the title;' nor need the title state the mode in which the subject is treated, nor the means by which the end sought by the enactment is to be reached." McQuillin, Municipal Ordinances, sec. 141. See, also, 43 C. J. 523.

Where the title indicates the subject of the proposed ordinance, the essential requirements of the statutory language quoted have been met, even though more appropriate language might have been employed therein. *Nebraska Loan & Bldg. Ass'n v. Perkins,* 61 Neb. 254, 85 N. W. 67.

Therefore, the conclusion is that section 12 of the ordi-

nance here involved is not vulnerable to the attack thus made thereon.

Defendant further contends that the inherent nature of the matters included in this ordinance is not within the legislative powers conferred on municipalities; that the state has appropriated the field so far as the subject of intoxicated drivers of motor cars is concerned, and the ordinance, so far as related to that subject, is forbidden by the state, both expressly and by necessary implication.

However, it is thought that the history of our legislation on, and related to, this precise subject, as well as the express terms of our existing law governing the same, support the contrary conclusion.

The intent of the legislature properly expressed is controlling in the disposition of the proposition thus presented.

It will be remembered that by the terms of its charter the city of Seward is empowered, by ordinance, "to prevent intoxication * * * and all disorderly conduct" (Comp. St. 1929, sec. 17-131) ; "to regulate traffic * * * upon the streets, sidewalks and public places" (Comp. St. 1929, sec. 17-141) ; "shall have the care, supervision and control of all public highways * * * streets, alleys, public squares and commons within the city * * * and shall cause the same to be kept open * * * and free from nuisances" (Comp. St. 1929, sec. 17-507). And, in addition, the city of Seward is vested with general powers "to make all such ordinances, by-laws, rules, regulations and resolutions not inconsistent with the laws of the state, as may be expedient, in addition to the special powers in this chapter granted, for maintaining the peace, good government and welfare of the corporation, and its trade, commerce and manufactories, and to enforce all ordinances by inflicting fines or penalties for the breach thereof," etc. (Comp. St. 1929, sec. 17-428).

The first legislation on the subject here for consideration was chapter 129, Laws 1905. It was, "An Act requiring registration of motor vehicles and regulating their use or operation upon the highways or streets." It contained twelve sections, but no provisions relative to intoxicated

drivers. Section 11 thereof provided: "Cities and towns shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring of any owner or operator of a motor vehicle any license or permit to use the public highway or exclude or prohibit any motor vehicle whose owner has complied with * * * this act from the free use of such highways, and all such ordinances, rules or regulations now in force, are hereby declared to be of no validity or effect."

Had section 11 been continued, it would of course have furnished support for defendant's contention. But in 1911 there was enacted chapter 115 of the session laws of that year. The title of the act included, "An Act defining motor vehicles, * * * regulating their use and operation upon the highways and streets," and providing for the repeal of previous legislation. It contained 13 sections. Section 6 thereof declared the operation of a motor vehicle by an intoxicated person by permission of the owner thereof to be unlawful. Section 10 provided penalties for the violation of its provisions. Section 11 provided: " (Local Ordinances.) Nothing in this act shall be construed in limiting the power of local authorities to make, enforce and maintain any ordinance, rule or regulation, in addition to the provisions of this act affecting motor vehicles."

By section 13 of this 1911 act, chapter 129, Laws 1905, as an entirety, was expressly repealed. Thus, the public policy of the state to in no manner interfere with municipal authorities in the due exercise of their charter powers over the subject here for consideration was definitely and clearly thereby established and declared.

The course of subsequent legislation evidences a like intent.

Sections 6, 10, and 11 of the act of 1911, we find as sections 3048, 3052, and 3053, of the Revised Statutes of 1913 of Nebraska. In 1919 they were reenacted as sections 27, 32, and 26 of title VII, article IV of chapter 190, Laws 1919, our Civil Code. They likewise appear in the Compiled Statutes of 1922 as sections 8391, 8396, and 8390. They are

also found in the Compiled Statutes of 1929 as sections 39-1101, 39-1106, and 60-326.

In 1931, by chapter 104 of the session laws of that year, section 39-1101, Comp. St. 1929, was amended by an act entitled, "An Act to amend sections 39-1101 and 60-405, Compiled Statutes of Nebraska, 1929," etc., and the respective scopes of the two last named sections were broadened. And again, in 1935, sections 39-1101 and 39-1106, Comp. St. Supp. 1933, were amended by chapter 134 of the session laws of that year to achieve a similar result. In 1937, by the terms of chapter 140, Laws 1937, under a title which included, "An Act to amend section 39-1106, Comp. St. Supp. 1933, as amended by section 2, chapter 134, session laws of Nebraska, 1935," such section was again amended to provide for punishment of intoxicated drivers, which is the legislation now in force on that subject. But the language of section 11 of chapter 115, Laws 1911, has continued wholly unchanged and now exists in the exact form of its original passage.

In 1926, in *Omaha & C. B. Street R. Co. v. City of Omaha*, 114 Neb. 483, 208 N. W. 123, such section 11, ch. 115, Laws 1911, was cited in support of the proposition that the ordinance there in question was not vulnerable to the objection that the provisions thereof were in excess of the powers then possessed by cities of the metropolitan class.

In the consideration of this course of legislation thus outlined, two principles of statutory construction should be kept in mind, viz.:

(1) In codifying or revising statutes, a mere rearrangement of the sections or parts of a statute, or the placing of portions of what was originally a single section in separate sections, does not change the purpose, operation and effect thereof.

(2) Stating it broadly, a compiler is not a lawmaker, and codification is not legislation. Further, a statute neither gains nor loses force by the place it occupies in the collection of laws; its sanction depends upon its own terms, and would be the same if it had been printed anywhere else in

the code. *Paulson v. Hurlburt,* 93 Or. 419, 183 Pac. 937.

"An act of the legislature, the sole purpose of which is stated in the title to be to amend a specified section of a complete and comprehensive act, makes the section so amended a part of the original act, which must, if possible, be so construed as to give it a meaning consistent with the whole act." *State v. Coupe,* 91 Neb. 463, 136 N. W. 41.

"The section of an act properly amended should be construed precisely as though it had been originally enacted in its amended form." *State v. Hevelone,* 92 Neb. 748, 139 N. W. 636.

It will be noted that section 39-1106, Comp. St. 1929, originally was section 10, ch. 115, Laws 1911, as subsequently amended. It still remains and must be construed as a part of the act of 1911, in connection with the surviving sections thereof as still continued in our Compiled Statutes. It must be construed precisely as though it had been originally enacted in its amended form. It must be given a meaning consistent with the whole act of which it remains an essential part. It cannot be construed as a part of our Uniform Motor Vehicle Act of 1931 from which it was not derived. It therefore clearly appears that in view of the course of legislation, and the express terms of section 60-326, Comp. St. 1929, the provisions of section 12 of Ordinance No. 503 of the city of Seward are not void as being inconsistent with, or repugnant to, the terms of the state statutes, and are not beyond or in excess of the city's legislative powers conferred upon it by law. *Christensen v. Tate,* 87 Neb. 848, 128 N. W. 622; *Bodkin v. State,* 132 Neb. 535, 272 N. W. 547.

Nor are we, in this connection, in any manner concerned as to the provisions of chapter 141, Laws 1937. This chapter was passed without an emergency clause, and approved May 11, 1937. We take judicial notice of the final adjournment of that legislature, and that this act of 1937 did not take effect until three calendar months after the adjournment of the session at which it was passed. The misdemeanor with which the defendant was charged was com-

mitted on May 2, 1937. Prosecution had been properly instituted on May 3, 1937. This statute, approved May 11, 1937, and taking effect thereafter, in view of its terms, in no manner affected pending actions by operating to repeal the legislation, expressly or by implication, upon which the instant prosecution is based. Comp. St. 1929, sec. 49-301. See, also, *Lower v. State,* 109 Neb. 590, 191 N. W. 674.

But, plaintiff in error also contends that in 1931 Nebraska "passed the Uniform Act Regulating the Operation of Vehicles on Highways;" that, when this general statute was adopted, the municipality lost its police power in this field because the state had spoken; that therefore the Seward ordinance under consideration, as applied to the facts involved in this case, had ceased to be a lawful, effective enactment. The case of *Bainter v. Appel,* 124 Neb. 40, 245 N. W. 16, is cited in support of this contention.. In such *Bainter* case it will be noted that this court determined only that the legislative action referred to therein amounted to a "substantial adoption" of the Uniform Act regulating the operation of vehicles on highways. It did not amount to a complete adoption of the recommendations made.

We note that in section 2, Title II of the act, as recommended by the commissioners on uniform laws, it is provided, viz.:

"It shall be unlawful and punishable as provided in section 63 of this act for any person whether licensed or not who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle upon any highway within this state." Handbook of the National Conference of Commissioners (1926) p. 532.

By chapter 110, Laws 1931, under a title which included the provision, "to make uniform the law relating to the subject-matter of this act," certain portions of this uniform act regulating the operation of vehicles on the highways, thus recommended, were adopted by our legislature, but section 2, Title II of the recommended measure, above quoted, was stricken out and not adopted, and the terms

of the act as actually adopted neither expressly repealed, modified, nor amended sections 39-1101, 39-1106, and 60-326, Comp. St. 1929.

Such chapter 110, Laws 1931, contained 63 sections, in none of which is the offense of driving a vehicle upon any highway while under the influence of intoxicating liquor defined and punished. The law of this state, therefore, on this subject remained as it had existed prior to the adoption of this act, and was wholly unaffected thereby.

In this connection, it will be remembered that repeals by implication are not favored. *City of Central City v. Marquis,* 75 Neb. 233, 106 N. W. 221; *Beha v. State,* 67 Neb. 27, 93 N. W. 155; *Albert v. Twohig,* 35 Neb. 563, 53 N. W. 582.

Nor do we find that the order of the district court directing that the defendant should not drive a motor vehicle within the state for a period of one year amounts to an unlawful impairment of defendant's rights. It is sustained by the terms of the ordinance. It is consistent with the terms of chapter 140, Laws 1937, which contemplate, and are indeed authority for, the proposition that a similar order may be made, "Upon conviction (of the defendant) in any court within this state of any violation of any law of this state pertaining to the operation of motor vehicles or any city or village ordinance relating to the operation of a motor vehicle in a manner to endanger life, limb or property," etc. Laws 1937, ch. 140, sec. 2.

It may be said, under the circumstances here presented, that the revocation or suspension of the driver's license upon his conviction is not a punishment for the offense, but a mere incidental consequence of the violation of the ordinance. *State v. Parks,* 199 Minn. 622, 273 N. W. 233.

It constitutes no part of the technical penalty prescribed, but is a mere police regulation intended for the benefit of the public, and follows as an incident of a legal conviction. *Smith v. State,* 124 Neb. 587, 247 N. W. 421.

Complaint is also made of the ruling of the trial court permitting the introduction of a certain bottle of liquor by

the prosecution upon rebuttal. This item of evidence had not been introduced as part of the evidence in chief.

The following appears in the evidence offered in behalf of the defense, viz.: Mr. Gembler testifying in his own behalf. "Q. Was there any liquor in your car? The officer testified that he found—they didn't produce it I notice, but they said they found some alcohol and a bottle of coca cola in your car. A. I didn't know it if there was." Defendant's attorney: "I would ask the city attorney to please produce it if he has it."

The rule governing this subject appears to be, viz.:

"As a rule, the party holding the affirmative will not be permitted to prove again in rebuttal facts shown in making out his case in chief; but it is within the discretion of the court to permit the introduction, in closing, of evidence not strictly rebutting." *Murphey v. State,* 43 Neb. 34, 61 N. W. 491.

In *Brown v. State,* 125 Neb. 287, 250 N. W. 67, wherein a somewhat similar question was presented, the rule was announced, viz.:

"In a criminal prosecution, any testimony, otherwise competent, which tends to dispute the testimony offered on behalf of the accused as to a material fact, is proper rebuttal testimony."

It is obvious that, in the instant case, there was no abuse of discretion by the trial court in the admission of the evidence complained of.

A careful examination of the entire record is quite convincing that the substantial rights of the defendant have received complete protection, and the judgment of conviction and sentence imposed thereunder is, in all respects,

AFFIRMED.